**AFFIDAVIT IN SUPPORT OF APPLICATION FOR
SEIZURE WARRANT**

Items to be Seized:

A.  Funds in Bank of America checking account number xxxxxxxx7468 up to and including $295,328.38 held in the name of "Brotherhood of Men, Inc."

B.  One Black 2000, 4-Door Mercedes-Benz S430 Sedan
    VIN WDBNG70J4YA046776

**AFFIANT'S EXPERIENCE**

1.  I am a Special Agent of the Internal Revenue Service-Criminal Investigation (IRS-CI) and have been so employed since February 22, 2003. As an IRS Special Agent, I am responsible for investigating possible violations of federal tax and criminal law, including violations of Titles 18, 26 and 31 of the U.S. Code. I have conducted numerous prior and ongoing investigations into violations of such federal crimes as the Money Laundering Control Act (Title 18), the internal revenue laws (Title 26), the Bank Secrecy Act (Title 31) and similar financial and non-financial offenses. I have participated in complex interstate criminal investigations with agents and detectives from the Federal Bureau of Investigation, the Department of Homeland Security, the Virginia State Police, the Arlington County Police and the Northern Virginia High Intensity Drug Trafficking Area (HIDTA) Task Force. I have received more than twenty (20) hours of training in federal search and seizure procedures and have participated in the preparation and execution of numerous search warrants.

2.  Prior to conducting investigations as an IRS Special Agent, I obtained a B.S. in Business Administration from the University of the District of Columbia and graduated from the Federal Law Enforcement Training Center. I also received extensive training in

how to conduct complex criminal and financial investigations. I have conducted numerous investigations involving the analysis and tracing of funds through the American banking system and the tracing and documentation of asset acquisitions and expenditures, including the laundering of funds through the United States' financial system. I have become familiar with various methods used by criminals to conceal the source, identity and movement of funds obtained as the proceeds of crime.

3. I have previously participated in investigations involving money laundering in violation of 18 U.S.C. Section 1957, mail fraud in violation of 18 U.S.C. Section 1341, wire fraud in violation of 18 U.S.C. Section 1343 and bank fraud in violation of 18 U.S.C. Section 1344. I am familiar with most of the criminal offenses that come to light in complex financial crime and fraud investigations.

## APPLICATION PURPOSE

4. I am submitting this affidavit in support of an application for a seizure warrant pursuant to 18 U.S.C. Section 981 for certain assets of Duane MCKINNEY, a Maryland resident, which are the proceeds of illegal activity by Mr. MCKINNEY related to real property located in the District of Columbia.

5. I am submitting this affidavit specifically to obtain a seizure warrant for two particular assets of Mr. MCKINNEY: (a) up to $295,328.38 in funds a Bank of America business checking account in the name of an entity known as the Brother of Men, Inc. (account # xxxxxxxx7468), for which Mr. MCKINNEY is President and the sole authorized signatory on the account (the address for the account is also the home address for Mr. MCKINNEY on his Maryland driver's license); and (b) an automobile described as a

2000 black 4-door Mercedes Benz S430 Sedan (VIN # WDBNG70JYA046779) with Virginia temporary tags Z945 336 (Expiration 08/05).

6. The Brotherhood of Men, Inc. bank account was opened June 21, 2004 by Mr. MCKINNEY. Mr. MCKINNEY is the only authorized signer for this account. The Mercedes vehicle is registered with a state of Virginia paper license (temporary tag). Mr. MCKINNEY purchased the Mercedes from Best Auto Sales, Incorporated, in Arlington, Virginia, on July 2, 2005. There is no lien on the vehicle.

7. I submit this affidavit because I have probable cause to believe that these two assets are traceable to the proceeds of a fraudulent scheme executed by Mr. MCKINNEY and involving criminal wire fraud in violation of 18 U.S.C. Section 1343. This scheme transpired, among other times, on June 16, 2005, when Mr. MCKINNEY received settlement proceeds from the sale of real property located at xxxxxxxx, Washington, D.C. 20002 in an interstate wire transfer in the amount of $295,328.38 into the Bank of America account xxxxxxxx7468, a piece of real property that Mr. MCKINNEY did not lawfully own but in fact obtained through the filing of a forged deed from a deceased owner (date of death: February 11, 1997), at the Recorder of Deeds Office in the District of Columbia on July 6, 2004, purporting to give ownership of the xxx Street property, through a quitclaim deed, to Mr. MCKINNEY.

8. As set forth below, I have probable cause to believe that proceeds from this fraudulent real estate sale were wired into the Bank of America account (account # xxxxxxxx7468) controlled by Mr. McKinney referenced above and that, after the money was wired into

the bank account, some of it was withdrawn by Mr. MCKINNEY and a portion of that money was used by him to obtain the Mercedes Benz automobile referenced above.

9. I make this affidavit based, in part, on personal knowledge through investigative techniques and, in part, upon information derived from oral and written statements made by Mr. MCKINNEY to law enforcement officers and to me by law enforcement officers, representatives of financial institutions, and parties (or putative parties) to real estate transactions with Mr. MCKINNEY.

**PROBABLE CAUSE**

10. On June 10, 2005, an Arlington County Police officer approached a car driven by Mr. MCKINNEY stopped near the intersection of Route 50 and Washington Boulevard in Arlington, County, VA. The car, a 2002 Black 745LI 4-Door BMW, was pulled over along the shoulder of the road. When the officer asked the apparent driver for his identification, Mr. MCKINNEY produced a Maryland driver's license indicating that he resided at xxxxxxxxxxxxxxxxxxxxxxxxx, Upper Marlboro, Maryland.

11. During the officer's encounter with Mr. MCKINNEY, the officer decided to run Mr. MCKINNEY'S name for any outstanding warrants. The officer learned that Mr. MCKINNEY had a valid outstanding Failure to Appear warrant for a criminal case involving an assault and battery charge in Arlington County, VA. The officer arrested Mr. MCKINNEY on the outstanding warrant and advised Mr. MCKINNEY of his rights.

12. After Mr. MCKINNEY was arrested, there was no adult with a valid driver's license with Mr. MCKINNEY to remove the BMW from its location along the road in Arlington, Virginia. Therefore, in order to move the vehicle from its location, the Arlington County

Police Department took custody of the car and, thereafter, conducted an inventory search of it.

13. During the inventory search of the vehicle, officers discovered a duffle bag containing $159,040 in cash.

14. After the currency was discovered, Mr. MCKINNEY engaged in a discussion with Arlington County Police officers. During that discussion, officers asked Mr. MCKINNEY about the origin of the $159,040 found in the trunk of the BMW. Mr. MCKINNEY stated that he was a real estate investor. He indicated that he was President and founder of a non-profit organization called The Brotherhood of Men, Incorporated, located in Washington, D.C., which he said was in existence for ten years. (Mr. MCKINNEY also indicated that he was a television producer for DCTV.) Mr. MCKINNEY stated that he had withdrawn the $159,040.00 from the Bank of America in Washington, D.C., in incremental stages during the year.

15. Mr. MCKINNEY stated that one of the purposes of the Brotherhood of Men, Inc. is to "quitclaim" property and to buy properties. MCKINNEY explained that he had cash in his BMW automobile to pay individuals who wanted to sell their real property to him.

16. Mr. MCKINNEY further told the Arlington Police that he was in Arlington, Virginia that day on his way to purchase two 16-passenger vans for Greenleaf Gardens Community Center in southwest Washington, D.C. Mr. MCKINNEY stated that Brotherhood of Men, Inc. hires youth and provides them with on-the-job training. He explained that he also intended to use the cash found in his BMW to pay his young employees a stipend. Mr. MCKINNEY stated that he always carries large sums of cash

and that it was not uncommon for him to have that amount in his possession. Mr. MCKINNEY said that he normally carries $25,000 – $200,000 in cash that he stores in the truck of his vehicle.

17. Mr. MCKINNEY said that he purchased the 2002 Black BMW from Best Auto Sales in Arlington, Virginia for $47,000. He said that he paid for the BMW using a cashier's check and cash withdrawn from the Bank of America Account referenced above – which he referred to as an account in the name of the Brotherhood of Men (an alleged 501(C)(3) non-profit entity).

18. Following the arrest of Mr. MCKINNEY, the Arlington County Police Department retained the BMW and $159,040.00 in cash found in the duffle bag in the car.

19. After Mr. MCKINNEY's arrest, I conducted an investigation with members of the HIDTA Northern Virginia Money Laundering task force to trace the origins of the $159,040 in cash.

20. During the investigation, I learned that Mr. MCKINNEY is or was involved in a number of lawsuits in D.C. Superior Court involving contests over the true ownership of real property. I and other investigators obtained a list of properties at issue in these court cases and we decided to interview witnesses and otherwise investigate the transfer and ownership of these properties.

21. During the investigation, I researched deeds at the D.C. Recorder of Deed Office. A search in that office for properties that were either deeded to or deeded from Mr. MCKINNEY or the Brotherhood of Men, Inc. produced a list of several properties. From the list, I chose the following property transaction histories to trace: (1) xxxxxxxx xxxxx

xxxx Washington, DC deeded to Carson Ruffner ("Xxxxxxxxxxx"); (2) xxxxxxxxxxx Washington, DC deeded to John Albert and Leona Marsh Harrington ("Xxxxxxxxxxx"); and (3) xxxxxxxxxxx Washington, DC deeded to Ronald Washington ("xxxxxxxxxxx").

Xxxxxxxxxxx Transactions

22. I then conducted an investigation into the ownership and any sale of the real property in the District of Columbia located at xxxxxxxx xxxxxxx, Washington, D.C. The investigation revealed that on July 21, 2004, a deed was filed in the D.C. Recorder of Deeds office indicating that an individual named Carson Ruffner had transferred ownership of the Xxxxxxxxxxx property to the Brotherhood of Men. But law enforcement agents interviewed Mr. Ruffner in Falls Church, Virginia concerning the true ownership the Xxxxxxxxxxx property. Mr. Ruffner was shown a copy of the July 22, 2004 deed in which he purportedly agreed to transfer the Xxxxxxxxxxx property to the Brotherhood of Men. The deed purported to contain his signature. But Mr. Ruffner indicated that the July 24, 2004 deed was a forgery, that he had not signed the deed, and that he had never seen that deed before.

23. Further investigation revealed that, on August 12, 2004, the Brotherhood of Men, Inc. transferred its interest in the Xxxxxxxxxxx property to Qiyao Yuan and Vivian Kwok, through a deed signed by Mr. MCKINNEY.

24. According to a Bank of America account statement recovered from Mr. MCKINNEY's BMW during the inventory search, on August 13, 2004 a $40,000 deposit was made into Bank of America account number xxxxxxxx7468, titled the Brotherhood of Men, Inc. The only deposit made during that statement period was $40,000 (It can therefore be

inferred that Qiyao Yuan and Vivian Kwok purchased the Xxxxxxxxxxx property from MCKINNEY by paying him at least $40,000 in cash.)

25. The true owner of the Xxxxxxxxxxx property, Mr. Ruffner, indicated to the law enforcement agents that he had never heard of the Brotherhood of Men. Mr. Ruffner stated that he was aware of a Duane McKinney but has no knowledge of him. Mr. Ruffner stated that he has no knowledge of Vivian Kwok or Qiyao Yuan (also known as "Charlie"). Mr. Ruffner did say that he knows a Charlie, but he indicated that he does not know whether the Charlie he knows is the same person also known as Qiyao Yuan.

<u>Xxxxxxxxxxx Transactions</u>

26. I also conducted an investigation into the ownership of the Xxxxxxxxxxx property. This investigation revealed that on February 16, 2005, a deed was recorded at the D.C. Recorder of Deeds office transferring the Xxxxxxxxxxx property from John A. and Leona M. Harrington to The Brotherhood of Men, Inc. The execution of deed was witnessed by Elyah (sp?) Newbirth, Jr. The deed was notarized by Joe D. Liles, Sr. on February 16, 2005.

27. Further investigation by me and other law enforcement agents – including a review of Social Security records and an interview of a Xxxxxxxxxxx property neighbor – revealed that the alleged transferors of the Xxxxxxxxxxx property were dead on the date they allegedly signed the deed (February 10, 2005) transferring ownership of the property to the Brotherhood of Men, Inc.

28. Further investigation revealed that on April 23, 2005, The Brotherhood of Men, Inc. transferred the Xxxxxxxxxxx property to an individual named Chen Ping. The deed

appeared to be signed by Mr. MCKINNEY and witnessed by Jack Exles, and also notarized by him, on April 23, 2005.

29. According to the Bank of America, on April 25, 2005 – just two days after the sale of the Xxxxxxxxxxx property, a deposit of $20,000 in the form of a Wachovia Bank cashier's check was made into the Brotherhood of Men account, number xxxxxxxx7468, endorsed by Mr. MCKINNEY. Ping Chen, who received the Xxxxxxxxxxx property from the Brotherhood of Men in a deed on April 23, 2005, was the remitter on the cashier's check (It can therefore be inferred that Chen Ping purchased the Xxxxxxxxxxx property from MCKINNEY by paying him $20,000.)

xxxxxxxxxxx Transactions

30. I and other agents conducted an investigation to the true ownership of the xxx Street property. Through our investigation we discovered that on July 6, 2004, a deed was filed with the D.C. Recorder of Deeds office allegedly transferring ownership of the xxx Street property from an individual named Ronald Washington to the Brotherhood of Men, Inc. The deed was witnessed with what appears to the affiant to be Mr. MCKINNEY's signature and the deed appears to have been notarized, on July 6, 2004, by an individual named Joe D. Liles, Sr. Mr. Liles is the same notary public on all three properties that appear to have been transferred by forged deed as listed above.

31. I discovered that among the items found in Mr. MCKINNEY's BMW at the time of his arrest on June 16, 2005 was a photograph of the xxx Street property. Also in the BMW were notices concerning the xxx Street property addressed to Ronald Washington, including notices from various D.C. agencies regarding delinquent water/sewer charges,

property tax bills, and other expenses pertaining to the xxx Street property.  Also in the BMW were receipts from cashier's checks from the Bank of America used to pay the real property tax bills in D.C. for the xxx Street property.

32. Further investigation revealed that Ronald Washington was already deceased on July 6, 2004 when, according to the deed filed with the D.C. Recorder of Deeds on July 6, 2004, he signed a deed granting the xxx Street property to the Brotherhood of Men.  A review of Social Security records and other information indicated that the Ronald Washington died on February 11, 1997.

33. During our investigation into the xxx Street property transaction, I and other agents discovered that on June 16, 2005, Cosmopolitan Real Estate Settlement, Inc., of Silver Spring, Maryland, caused $295,328.38 to be wired from its account at the Columbia Bank, located in Maryland, to the Bank of America account no. xxxxxxxx7468 in the District of Columbia which is the Brotherhood of Men's account for which Mr. MCKINNEY is the sole approved signatory.

34. On July 8, 2005, Ralph Bernardo, President of Cosmopolitan Real Estate Settlement Group, said that the $295,328.38 wire to the Brotherhood of Men bank account was part of a real estate settlement.  Mr. Bernardo then produced a settlement sheet indicating that the money was transferred to the Brotherhood of Men account as part of the settlement of the sale of the xxx Street property.

35. The settlement sheet produced by Mr. Bernardo for the xxx xxxxxx property listed the seller as The Brotherhood of Men and the purchaser as an entity named xxxxxxxx, N.W. LP.

36. I submit that the evidence obtained during this investigation shows probable cause to believe that all three properties at xxxxxxxx xxxxxx, N.E., xxxx Xxxxxxxxxxx, N.E., and xxxxxxxx were all transferred to the Brotherhood of Men using forged deeds (in a scheme to defraud the true owners) involving Duane MCKINNEY and that the proceeds of the subsequent sale of those properties – including the $295,328.38 at issue in this seizure warrant, which amount corresponds to proceeds from the sale of the xxx Street property, are the proceeds of criminal activity.

## LAUNDERING AND DISPOSITION OF PROCEEDS OF FRAUD

37. During the course of this investigation I learned the following additional facts concerning the assets which the Government seeks to seize in this warrant: (1) funds on deposit in Bank of America Account No. xxxxxxxx7468 in the name of Brotherhood of Men, up to and including $295,328.38; and (2) the 2000 Mercedes Benz.

38. On June 16, 2005, the Columbia Bank, in Maryland, wired $295,328.38 from the sale of the 3rd Street property into Bank of America account number xxxxxxxx7468, the account ostensibly opened under The Brotherhood of Men, Inc. name but with Duane MCKINNEY as the only signatory for the account. (As previously stated, the settlement company, Cosmopolitan Real Estate Settlement, Inc., of Silver Spring, Maryland, used Columbia Bank.)

39. On June 20, 2005, Mr. MCKINNEY withdrew $290,000 from the Bank of America account, at a branch in located Maryland, via a single cashier's check made payable to himself. Thereafter, Mr. MCKINNEY broke down the $290,000 cashier's check into smaller cashier's checks made payable to himself and other non-profit organizations, and

re-deposited some of those same cashier's checks into the same Bank of America account.

40. On June 20, at a Bank of America branch located in the District of Columbia, Mr. MCKINNEY cashed the $290,000 Bank of America cashier's check that was purchased with funds from Bank of America account number xxxxxxxx7468. After cashing the check, Mr. MCKINNEY had the bank issue another cashier's check made payable to him for $240,000, and three other cashier's checks for $10,000 each. He took the remaining balance, $20,000, as cash. On June 27, 2005, Mr. MCKINNEY cashed the $240,000 cashier's check. He took $80,000 as cash, and he requested another cashier's check for $160,000. Then, on the same date, Mr. MCKINNEY went to another branch and cashed the $160,000 cashier's check. He took $50,000 as cash and requested that the balance be turned into a $100,000 cashier's check and a $10,000 cashier's check. On June 29, 2005, Mr. MCKINNEY cashed the $100,000 cashier's check. Of the $100,000 he received, Mr. MCKINNEY re-deposited $77,500 into Bank of America account number xxxxxxxx7468. In my experience, these transactions constitute an effort by Mr. MCKINNEY to make the financial trail more complicated to trace.

41. Records indicated that on July 2, 2005, Mr. MCKINNEY purchased the 2000 Mercedes Benz at issue from Best Auto Sales ("Best") in Arlington, Virginia. An employee of the dealership said that Mr. MCKINNEY told the employee that the BMW he had previously purchased from Best had been seized by Arlington County Police and that he was looking for a new car. Mr. MCKINNEY then paid $28,895 for the 2000 Mercedes Benz with a $25,000 cashiers check drawn from Bank of America, with the remaining $3,952.40 paid

in cash. On July 5, 2005 Mr. MCKINNEY withdrew $34,000 in cash. Of the $34,000 cash withdrawal, Mr. MCKINNEY purchased a Bank of America cashier's check number 0112987 payable to Best. The remaining balance of $9,000 in cash was given to Mr. MCKINNEY. (This is the same bank account into which Columbia Bank, acting on behalf of Cosmopolitan Real Estate Settlement, Inc., wired $295,328.38, on June 16, 2005, after settlement of the xxx Street property.)

42. On June 2, 2005, according to the dealership employee, Mr. MCKINNEY purchased for $47,195 the 2002 BMW that the Arlington County Police seized on June 10, 2005. Mr. MCKINNEY paid for that BMW with two cashier's checks drawn on Bank of America xxxxxxxx7468 with the balance paid in cash. Mr. MCKINNEY also traded in a vehicle as part of the BMW purchase. In the trade-in vehicle, law enforcement agents found Bank of America receipts and several business cards, one of which listed Duane MCKINNEY as president of The Brotherhood of Man.

**CONCLUSIONS OF AFFIANT**

43. Based on the investigation I have conducted along with the Arlington County Police, the Virginia State Police and the members of the HIDTA Northern Virginia Task Force, my training and experience in these investigations, and the facts articulated in this affidavit, I submit that there is probable cause to believe that proceeds from a fraudulent sale of the xxx Street property were wired into the Bank of America, account number xxxxxxxx7468, and that an interstate use of the wires to further a fraudulent scheme was executed in violation of the federal wire fraud statute, 18 U.S.C., Section 1343.  I am advised that, in pertinent part, 18 U.S.C., Section 984 provides that in any forfeiture action *in rem* in which the subject property is cash or funds deposited in an account in a financial institution, it is not necessary for the government to identify the specific property involved in the offense that is the basis for the forfeiture and it is not a defense that the property involved in such an offense has been removed and replaced by identical property.  Instead, any identical property found in the same place or account as the property involved in the offense that is the basis for the forfeiture shall be subject to forfeiture provided that the seizure occurs within one year of the date of the offense. Therefore, funds in the Bank of America, account number xxxxxxxx7468, up to $295,328.38, are subject to seizure for forfeiture under 18 U.S.C., Section 981(a)(1)(C) (as proceeds from wire fraud, a specified unlawful activity), and Section 984.

44. I likewise submit that there is probable cause that Duane MCKINNEY, by engaging in monetary transactions with such criminal proceeds in the manner described above, and by removing funds from that same Bank of America account in the amounts specified,

violated the federal money laundering statute, 18 U.S.C., Section 1957, and that the funds in the Bank of America account (including up to $295,328.38) are therefore subject to seizure for forfeiture under Title 18 U.S.C., Section 981(a)(1)(A) (as property involved in money laundering).

45. I also submit that there is probably cause to believe that the vehicle described as a black 2000 Mercedes Benz, 4-door S430 Sedan, VIN # WDBNG70J4YA046776, was purchased with funds withdrawn from Bank of America account number xxxxxxxx7468, in violation of the federal money laundering statutes, 18 U.S.C., Section 1957, and that the vehicle is therefore also subject to seizure for forfeiture under Title 18 U.S.C., Section 981(a)(1)(A).

46. I hereby request that a seizure warrant as authorized under Title 18 U.S.C., Section 981(a)(1)(A) be issued to seize the aforementioned property.

_____
RONALD D. WILLIAMS
Special Agent, IRS CID

Subscribed and sworn to before me this _____ day of July, 2005

_____
UNITED STATES MAGISTRATE JUDGE